UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80584 CIV-RYSKAMP/VITUNAC

STEVEN ABEL, ON HIS OWN BEHALF
AND ALL OTHERS SIMILARLY
SITUATED,

    Plaintiff,

v.

SOUTHERN SHUTTLE SERVICES,
INC., A FLORIDA CORPORATION,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE comes before the Court pursuant to Defendant Southern Shuttle Services, Inc.'s ("Southern Shuttle") Motion for Summary Judgment, filed March 4, 2008 **[DE 23]**. Plaintiff Stephen Abel ("Abel") responded on March 21, 2008 **[DE 25]**. Southern Shuttle replied on March 31, 2008 **[DE 28]**. This motion is ripe for adjudication.

**I. BACKGROUND**

Southern Shuttle is the franchise of the SuperShuttle ground transportation in South Florida. Southern Shuttle operates "SuperShuttle" vans in South Florida and provides ground transportation services to the general public traveling to and from the Miami, Fort Lauderdale-Hollywood and Palm Beach International Airports. Defendant's Statement of Facts ¶1. Southern Shuttle also operates Passenger Motor Carrier ("PMC") vans, which transport members of the general public in Miami. Id. ¶ 1. Southern Shuttle's vans are operated in the same way as other taxicabs. Id. ¶1. Rather than charging customers for distance and time using a meter, Southern

Shuttle charges customers for distance and time by using zone prices. Id. ¶2(I). Rather than transporting passengers individually, Southern Shuttle transports passengers along with other passengers. Id. ¶1. Southern Shuttle runs its transportation business from stands at the Palm Beach International Airport and the Miami International Airport. Id. ¶2(f). Southern Shuttle cannot be controlled by airlines, hotels, or other companies. Id. ¶2(d). Many of its drivers possess the same licenses that taxicab drivers possess. Id. ¶2(a). The vans transport passengers locally. Id. ¶2©. Southern Shuttle provides point-to-point transportation. Id. ¶2(b). Southern Shuttle transports passengers without fixed routes and without a pre-determined time schedule. Id. ¶2©. The vans are contracted at the airport or radio-dispatched. Id. ¶2(g). Southern Shuttle advertises under the same headings as other taxicab companies. Id. ¶2(e). In addition to receiving a percentage of the net revenue booked by Southern Shuttle, its drivers receive tips. Id. ¶2(h).

     Southern Shuttle hired Abel on December 19, 2005 as a driver to transport passengers to and from Miami International Airport, Fort Lauderdale-Hollywood International Airport and Palm Beach International Airport. (Id. ¶3.) During his first 90 days of employment, Abel received commissions consisting of 23% of the net revenues booked by Southern Shuttle, in addition to tips. (Id. ¶3.) After 90 days, he received commissions consisting of 25% of the net revenue, in addition to tips. For any period in which Abel's commissions plus tips were less than minimum wage, Southern Shuttle paid the amount necessary to compensate him at minimum wage. (Id. ¶ 3.) Abel admits that his passenger-transportation duties occupied approximately ninety percent (90%) of his work hours during most weeks. Declaration of Steven Abel ¶2. He claims that he also performed maintenance, trained drivers, and did other tasks. Id.

Abel ended his employment with Southern Shuttle on June 24, 2007, after refusing to transport a passenger with a payment voucher and making the passenger get out of the van, in violation Southern Shuttle policy. Southern Shuttle terminated Abel on June 25, 2007. Defendant's Statement of Facts ¶ 3. Abel brings an overtime case against Southern Shuttle under the Fair Labor Standards Act, 29 U.S.C. § 201 et. seq. ("FLSA"). Southern Shuttle has moved for summary judgment on the grounds that the FLSA does not apply to taxicab drivers.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. See id., 106 S.Ct. at 2510. The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. Celotex, 477

U.S. at 322-23, 106 S.Ct. at 2552-53.  The moving party need not supply "affidavits or other similar materials negating the opponent's claim."  Id., 106 S.Ct. at 2552-53.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)).  Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings.  Id., 106 S.Ct. at 2553.  "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; 106 S.Ct. at 2552.  See also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999).

### III. DISCUSSION

The FLSA overtime requirements do not apply to "any driver employed by an employer engaged in the business of operating taxicabs" ("taxicab exemption").  29 U.S.C. § 213(b)(17); Cariani v. D.L.C. Limousine Service, Inc., 363 F.Supp.2d 637, 645 (S.D.N.Y. 2005)(finding that the defendant, an airport ground transportation company, fell within the taxicab exemption to the FLSA); Mitchell v. Yellow Cab Co., 36 Lab.Cas.(CCH) P 65,220 (W.D. Tex. 1959)(finding that drivers of a company that provided airport ground transportation for the use of the general public traveling to and from the airport fell within the taxicab exemption).  The taxicab exemption is still applicable even if the employee performs some nonexempt work, unless the amount of such nonexempt work is substantial.  29 C.F.R. § 786.200.  The amount of nonexempt work is

substantial if it occupies more than twenty percent (20%) of the employee's time during the workweek.  Id.  The exemption does not apply to limousine services or transportation services for the disabled.  Rossi v. Associated Limousine Serv., Inc., 438 F. Supp. 2d 1354, 1363 (S.D. Fla. 2006) (limousine service); Mascol v. E & L. Transp., Inc., 387 F.Supp.2d 87, 98 (E.D.N.Y. 2005) (transportation for the disabled).

In Cariani, the defendant ran a car and limousine service out of a location at the airport. 363 F. Supp. 2d at 639.  The defendant's company had a contract with the county to conduct its services out of a leased premises at the airport.  Id.  Similar to Southern Shuttle, the defendant could not be controlled by any airline or company.  Id. at 644.  The company's drivers transported their passengers locally, they did not run fixed routes or have any pre-determined time schedule, passengers contracted the cars at the airport or the defendant radio-dispatched the cars, the cars did not cruise the streets for passengers, among other advertisements, it advertised under the heading "Airport Transportation Services," the drivers received tips, and passengers could use the defendant's services to transport them to or from the airport as well as point-to-point transportation within the county or to adjacent regions.  Id. at 639-40.  After considering the above factors, the court concluded that the defendant's drivers fell within the taxicab exemption.  Id. at 645.

The taxicab exemption also applied in Mitchell.  There, the defendant's company entered into a contract with the city wherein it agreed to provide airport ground transportation for the use of the general public traveling to and from the airport.  The drivers did not follow any designated routes.  Each party made his or her own arrangement and transportation contract.  The company did not have a contract with any airlines to transport its passengers or crew, and no airline had

any right or authority to control or regulate the method or manner in which it operated its vehicles or conducted its business. It compensated its drivers by paying them a percentage of the fares collected. Yellow Cab maintained a dispatching office that sent vehicles to various parts of the city to transport passengers. The court found that the drivers fell within the taxicab exemption and were thus exempt from the FLSA's overtime provisions.

Cases to the contrary are distinguishable. Many involved companies that had prearranged contracts with airlines, hotels, or other companies who could control or regulate how the company operated its vehicles or conducted its business. <u>Powell v. Carey Int'l, Inc</u>., 483 F.Supp.2d 1168, 1172-73 (S.D. Fla. 2007)(defendants were limousine companies and had contracts with airlines to provide chauffeur services); <u>Powell v. Carey Int'l, Inc</u>., 490 F.Supp.2d 1202, 1213 (S.D. Fla. 2006)(defendant limousine companies had contractual arrangements with local hotels, corporate clients, and destination management companies); <u>Airline Transp. v. Tobin</u>, 198 F.2d 249, 250 (4th Cir. 1952)(the defendant had a contract with certain airlines in which the airline had the right to specify the time and place of arrival and departure of vehicles, the type of vehicle used and the uniform and discipline of drivers, and charged a fixed rate pursuant to the contract); <u>Wirtz v. Cincinnati, Newport and Covington Transp. Co.</u>, 375 F.2d 513, 515 (6th Cir. 1967) (the defendant was under a contract with air carriers). Southern Shuttle's operations are not controlled by airlines, hotels, or other companies.

The Department of Labor has also concluded that Southern Shuttle falls within the taxicab exemption. While the FLSA does not define the term "business of operating taxicabs," the Department of Labor Field Operations Handbook provides the following definition:

> 24h01 "*Business of operating taxicabs*." The taxicab business consists normally of common carrier transportation in small motor vehicles of persons and such property as they may carry with them to any requested destination in the community. The business <u>operates without fixed routes or contracts for recurrent transportation</u>. It serves the miscellaneous and predominantly local transportation needs of the community. <u>It may include such occasional and unscheduled trips or from transportation terminals as the individual passengers may request, and may include stands at the transportation terminals</u> as well as at other places where numerous demands for taxicab transportation may be expected.

Chapter 24h of the Department of Labor Field Operations Handbook (1999 ed.) (emphasis added).

This definition is applicable because Southern Shuttle uses small motor vehicles, does not used fixed routes or contracts for continual transportation, serves the local transportation needs of Miami, Fort Lauderdale, and West Palm Beach, and allows customers to arrange for transportation services from stands at transportation terminals.

The Department of Labor found that Southern Shuttle's drivers fell within the taxicab exemption after conducting investigations in 1998, 2001, and 2003, for the period of 1996 through 2002. In each of its reports, it found that Southern Shuttle's drivers fell within the taxicab exemption. For example, in its September 5, 2001 report, the Department of Labor provided detailed reasons why Southern Shuttle's drivers are exempt from overtime payment. In the September 5, 2001 report, the Department of Labor concluded:

> Southern Shuttle Services, Inc. is a company that provides taxi type service to customers that need transportation from their residence/business to the Miami International Airport, the Seaport of Miami, Fort Lauderdale-Hollywood International Airport and the Seaport of Everglades. This employer uses small passenger vans to perform this service. These vans do not have any preset route. They charge the customers according to the zip code area that they live and their final destination. These vans do not

8

>have meters…. The drivers are exempt under Section 13(b)(17). They work as taxi drivers for Southern Shuttle Services, Inc.

See September 5, 2001 Department of Labor Report. (Ex. 1.)

Because the statute is silent regarding what constitutes the "business of operating taxicabs," the Court must determine whether the Department of Labor's definition is based on a permissible construction of the statute. Based on the Department of Labor handbook's comprehensive definition of "business of operating taxicabs," the Court finds that the Department of Labor permissibly construed 29 U.S.C. § 213(b)(17), and that such construction is reasonable.

Abel argues that Southern Shuttle is not entitled to summary judgment because it does not allege that it operates taxicabs. The thrust of Southern Shuttle's motion is that it operates what is essentially a taxicab service to and from airports in South Florida. A vehicle need not be yellow and have "taxicab" written across the door for its drivers to be exempt from the FLSA.

Abel argues that Southern Shuttle operates an "airport limousine service." The cases Abel refers to in his response, however, involve companies that actually advertised as limousine services. See Rossi, 438 F.Supp.2d at 1363 ("It is undisputed that Associated advertises itself as a limousine company"); Powell, 490 F.Supp.2d at 1208 (advertising in local phone books and visitor's guides under categories such as "Limousine, Taxi and Transportation Services," "Transportation Services," "Limousine Service," and "Airport Transportation"). Southern Shuttle does not advertise as a limousine company. Indeed, there is no evidence in the record that Southern Shuttle operates as a limousine service.

Although Abel references a Department of Labor Opinion on point, the opinion is distinguishable. See U.S. Dept. of Labor, Op. Ltr. of the Wage-Hour Div., 1998 WL 852774 (Apr. 17, 1998). The Opinion Letter addressed a party who provided passenger transportation services for disabled persons. The Opinion Letter cited Herman v. Brewah Cab, Inc., 992 F.Supp. 1054 (E.D. Wisc. 1998), which involved a firm engaged in the operation of van transportation services for the sick and elderly. The Opinion Letter explained that the ordinary meaning of the term "taxicab" contemplates vehicles that are offered for hire to the general public on the city streets. Herman is distinguishable because it involved a van transportation service for disabled and elderly persons rather than the general public.

Abel also stresses that he performed other tasks in addition to passenger transportation, but he admits that his passenger transportation duties occupied approximately 90% of his work hours during most weeks. Accordingly, the taxicab exemption applies.

## IV.   CONCLUSION

THE COURT, having considered the pertinent portions of the record and being otherwise fully advised, hereby

ORDERS AND ADJUDGES that Southern Shuttle's Motion for Summary Judgment, filed March 4, 2008 **[DE 23]**, is GRANTED. Final judgment shall issue by separate order.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 9th day of June, 2008.

> S/Kenneth L. Ryskamp
> KENNETH L. RYSKAMP
> UNITED STATES DISTRICT JUDGE